# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HORACE MANN INSURANCE COMPANY, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | 3:05-cv-0664 (CFD) |
| | : | |
| | : | |
| NATIONWIDE MUTUAL INSURANCE | : | |
| COMPANY, | : | |
| Defendant | : | |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This case concerns the duties owed to an excess or secondary liability insurer by a primary insurer, and arises out of an automobile accident in Connecticut. The defendant Nationwide Mutual Insurance Company ("Nationwide")[1] insured the owner of the vehicle involved in the one-car accident, and plaintiff Horace Mann Insurance Company ("Horace Mann")[2] insured its operator. Following the resolution of a bad faith action against both insurance companies, Horace Mann brought this diversity action against Nationwide seeking indemnification and equitable subrogation.[3] Pending are cross motions for summary judgment.

---

[1] Nationwide is an insurance company with its principal offices in Columbus, Ohio.

[2] Horace Mann is an insurance company with its principal offices in Springfield, Illinois.

[3] The parties do not dispute diversity jurisdiction and that Connecticut law applies. Horace Mann's claim that Nationwide violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, et seq. has been dismissed.

1

I.    Background[4]

   A.    The Underlying Accident and Insurance Coverage

On October 23, 1994, a one-car accident occurred in Waterbury, Connecticut.  John
Pruden was driving the automobile involved in the accident.  The car was owned by Bruce
Powers.  Vicki Benton and her daughter Katie Benton were passengers and were injured.[5]
Apparently, Vicki Benton suffered more serious injuries than her daughter.

On the date of the accident, Powers had an automobile insurance policy issued by
Nationwide.  The liability coverage limits under this policy were $20,000 per person and $40,000
per accident.  Pruden was also an insured under the Nationwide Policy at the time of the accident,
because he was operating Powers' automobile with his permission.

Pruden also had his own automobile insurance policy issued by Horace Mann.  The
liability limits on that policy were $100,000 per person and $300,000 per accident.

   B.    The Underlying Civil Actions

_____Vicki and Katie Benton filed separate personal injury actions in the Connecticut Superior
Court, naming both Pruden and Powers as defendants.  It is undisputed that both complaints were
served on Pruden and Powers.  According to Pruden, he forwarded the documents he received to
the insurance agent who had obtained his coverage under the Horace Mann policy.  In turn, the

_____

   [4] The following facts are taken from the parties' Local Rule 56(a) statements, summary
judgment briefs and other evidence submitted by the parties. They are undisputed unless
otherwise indicated.

   [5] Pruden was a resident of South Carolina.  He came to Connecticut on a trip and stayed
with Vicki Benton and her family.  Vicki Benton borrowed a car from her friend Powers to drive
Pruden to the airport.  Pruden was driving at the time of the accident.

agent forwarded documents related to the Benton actions to Horace Mann.[6]  Powers forwarded

the suit papers for both cases to Nationwide.

C.    Initial Defense of the Benton Actions

It is undisputed that Nationwide had the primary duty to defend and provide liability

coverage to both Pruden and Powers in the two Benton actions, and that Horace Mann was the

excess insurer for Pruden in both actions.  Marcia Wunderlich, an adjuster for Nationwide, was

responsible for handling the Benton claims.  Lesa Fletcher-Perez was an adjuster for Horace

Mann responsible for all such claims arising in Connecticut.

Nationwide retained the Connecticut law firm of Larry H. Lewis ("the Lewis firm") to

represent Pruden and Powers in the Katie Benton action.  The Connecticut law firm of Morrison,

Mahoney & Miller LLP ("Morrison Mahoney") was initially retained by Horace Mann to

represent Pruden in that claim.  However, Nationwide took over the defense of Pruden in the

Katie Benton action, and the Lewis firm entered an appearance for Pruden as well as Powers.

It is undisputed that Nationwide also knew of the Vicki Benton action from its outset.

According to Horace Mann, however, neither Pruden nor Nationwide informed it of the Vicki

Benton action.  Nationwide maintains that Horace Mann received the complaint in the Vicki

Benton action from Pruden shortly after it was served on Pruden.  Whatever occurred at that

time, neither Nationwide nor Horace Mann retained counsel to represent Pruden or Powers in the

Vicki Benton action.  Instead, Wunderlich directly negotiated a settlement of the Vicki Benton

action with Vicki Benton's attorney, Ralph Keen.  A settlement and release agreement dated

---

[6] The parties dispute whether the complaint and related documents in the Vicki Benton
action reached Horace Mann.

November 8, 1996 and signed by Vicki Benton resolved the Vicki Benton action on behalf of Powers and Nationwide for $20,000, the limit of Nationwide's policy for one claimant. The settlement agreement did not refer to Pruden and did not release claims against him or Horace Mann.[7] According to Wunderlich's testimony at her deposition in this action, she also intended to settle the Vicki Benton action on behalf of Pruden and would not have issued a settlement check if she had realized that the settlement agreement did not include him. According to Attorney Keen, he intended to settle the Vicki Benton action only against Powers, and intended to seek additional compensation from Pruden, and thus Horace Mann. The Vicki Benton action continued in the Connecticut Superior Court against Pruden after the Nationwide settlement as to Powers, but no appearance had been entered on behalf of Pruden.

The Katie Benton action was settled as to all parties on April 25, 1997. A settlement and release agreement signed by Vicki Benton, as parent and legal guardian of Katie Benton, acknowledged settlement of the Katie Benton action on behalf of Powers, Pruden, and Nationwide, and released both Powers and Pruden. The Katie Benton action was then apparently withdrawn from the Connecticut Superior Court.

D.     Defense of the Vicki Benton Action after Default

On December 11, 1998, a default judgment was entered against Pruden in the Vicki Benton action in the amount of $450,000, following a hearing on damages. In March 1999, Pruden assigned his rights under his Horace Mann automobile policy, and any claims he might

---

[7] Nationwide issued a settlement check while Wunderlich was on vacation. The adjuster who issued the check was unfamiliar with the Vicki Benton action and did not review the settlement and release agreement. However, when she returned from vacation, Wunderlich reissued the check because the original was not received by Keen.

have against Horace Mann or Nationwide, to Vicki Benton.

Horace Mann maintains that it had not learned of the Vicki Benton action until it received a letter from Attorney Keen dated March 18, 1999, informing it that this default judgment had been entered against Pruden. The letter bears a Horace Mann stamp reading "Received Mar 22 1999 Indpls Claims," but Horace Mann maintains that the letter did not reach Fletcher-Perez until April 2, 1999. In any event, Horace Mann responded by forwarding the letter to Morrison Mahoney, who had initially been retained by Nationwide to represent Pruden in the Katie Benton claim. Attorneys from Morrison Mahoney then entered an appearance in the Vicki Benton action on behalf of Pruden. On April 5, 1999, Morrison Mahoney faxed the March 18 letter from Attorney Keen to William Holland of the Lewis firm, counsel previously retained by Nationwide to defend Powers and Pruden in the Katie Benton action. Morrison Mahoney advised Attorney Holland that the deadline to file a motion to reopen the default judgment in the Vicki Benton action was April 11, 1999.[8]

Attorney Holland filed an appearance for Pruden in the Vicki Benton action and a timely motion to reopen, but the motion was denied because it did not include the affidavits required by Connecticut law. Attorneys from Morrison Mahoney intended to attend the hearing on the motion to reopen, but were not present. Attorney Holland initially appealed the denial of the motion to reopen, but then withdrew the appeal in February 2001.

E.     The Bad Faith Action

---

[8] According to Horace Mann, the deadline to file a motion to reopen was April 12, 1999. April 11 was a Sunday and April 12 a Monday. Under the Connecticut Rules of Court, the motion would have been due April 12. Conn. Practice Book § 7-17 (2008). There is no dispute that the motion was timely filed.

In September 2001, Vicki Benton (as the assignee of Pruden) filed a bad faith action against Horace Mann and Nationwide in this Court. See Docket Number 3:01-cv-1738 (RNC). It included claims for breach of the covenant of good faith and fair dealing, breach of contract, violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816, violation of CUTPA and the South Carolina Unfair Trade Practices Act,[9] intentional infliction of emotional distress, negligent infliction of emotional distress, negligent appointment of defense counsel, and breach of fiduciary duty. It was based on both insurers' failure to investigate and defend Vicki Benton's claim against Pruden; to file an adequate motion to reopen the default judgment against Pruden or to pursue the appeal; to communicate with Pruden regarding the claims against him, the motion to reopen, or the appeal; and to pay the default judgment.

In September 2002, Horace Mann settled the bad faith action with Vicki Benton for $700,000. The settlement agreement included a release of claims arising out of the Vicki Benton action and the bad faith action:

> including but not limited to any and all claims of personal injury, interest, judgments against John Pruden, breach of contract, bad faith . . . claims pursuant to Section 38-816 et. seq. of the Connecticut General Statutes, South Carolina laws, claims for punitive and exemplary damages and/or attorneys fees . . . claims of adjustment, investigation, negotiation, analysis, file handling, defense, active conduct of counsel retained and as to any activities surrounding the claim of Vicki Benton as it arose from an automobile accident of October 23, 1994 while riding as a passenger in a motor vehicle operated by John D. Pruden and owned by Bruce Power. Additionally this release is to include all claims of John Pruden as assigned to Vicki Benton.

In January 2003, Nationwide paid Vicki Benton an additional $140,000 to settle her bad faith claims against it.

F.     <u>Indemnification Action</u>

---

[9] Pruden resided in South Carolina.

6

The instant action was filed in the Eastern District of Pennsylvania by Horace Mann against Nationwide, seeking payment of its Vicki Benton bad faith settlement amount. It was transferred to this Court in April 2005. As mentioned, both parties have moved for summary judgment.

II.     Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

III.    Analysis

A.    Indemnification

Horace Mann claims that it is entitled to common law indemnification from Nationwide

because Nationwide bore the primary responsibility for the defense of the Benton actions.[10]

In Skuzinski v. Bouchard Fuels, Inc, the Connecticut Supreme Court explained the

standard for common law indemnification between joint tortfeasors:

> Ordinarily there is no right of indemnity or contribution between joint tort-feasors. . . .
> Where, however, one of the defendants is in control of the situation and his

---

[10] Horace Mann does not seek contractual indemnification, and it is unlikely that the Connecticut Supreme Court would hold that a direct action by an excess insurer against a primary insurer for duties owed to the insured is permitted.  See Infinity Ins. Co. v. Worcester Ins. Co., No. CV000597436, 2000 WL 1890126, at *3 (Conn. Super. Ct. Dec. 4, 2000); cf. Cont'l Cas. Co. v. Pullman, Comley, Bradley & Reeves, 929 F.2d 103 (2d Cir. 1991) (holding that excess insurer could not pursue legal malpractice action against defense counsel retained for insured by primary insurer).

Because common law indemnification does not ordinarily depend on the relationship between the joint tortfeasors, the Court assumes for the purposes of this motion that the doctrine of common law indemnification applies between an excess insurer and a primary one related to a personal injury action such as this.  However, the Connecticut Supreme Court has not yet recognized a cause of action for common law indemnification in this context.

By definition, common law indemnification applies only to liability based on negligence. Stevens v. Alan Barry & Assocs., LLC, No. CV 980333206S, 1999 WL 1328076, at *2 (Conn. Super. Ct. Dec. 29, 1999) (holding that the test for common law indemnification cannot be met where the underlying claims involve intentional torts); Mark Sonder Music, Inc. v. Fusco Corp.,No. CV030484571S, 2005 WL 834455, *3 (Conn. Super. Ct. Mar. 7, 2005) ("[T]he application of an active/passive negligence theory to indemnify for liability arising from intentional tort is problematic").

The only negligence claims in the bad faith action were for negligent infliction of emotional distress and negligent appointment of defense counsel.  This opinion assumes–but does not determine–that assignment of these claims was proper under Connecticut law.

To the extent the settlement was based on the remaining claims in the bad faith action, common law indemnification is likely inapplicable.  To the extent that the settlement was based on Benton's personal injuries, rather than the claims raised in the bad faith action, Horace Mann and Nationwide did not cause Vicki Benton's injuries and they were not joint tortfeasors with regard to these injuries.  Accordingly, their liability in the Vicki Benton action would be based on their insurance policies.

negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury. . . . Under the circumstances described, we have distinguished between 'active or primary negligence,' and 'passive or secondary negligence.' . . . Indemnity shifts the impact of liability from passive joint tortfeasors to active ones.

Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 697, 694 A.2d 788, 790 (Conn. 1997) (internal citation omitted).

Horace Mann admits that it has a duty to monitor a defense provided by the primary insurer when it is the excess carrier. Cf. Am. States Ins. Co. v. Allstate Ins. Co., 94 Conn. App. 79, 85, 891 A.2d 75, 79 (Conn. App. Ct. 2006) (noting that excess insurer was not acting as a volunteer when it undertook defense after primary insurer denied coverage); Siligato v. Welch, 607 F. Supp. 743, 746 (D. Conn. 1985) ("The excess carrier's duty to defend is secondary to the duty of the primary insurer, but it is no less real a duty."); Veteran's Mem'l Med. Ctr., v. Conn. Ins. Guar. Ass'n, No. Cv. 9402468785, 1996 WL 634264, at *6 (Conn. Super. Ct. Oct. 23, 1996) (noting that "it has long been held that" an excess insurer may make a settlement offer if the primary insurer fails to settle). Horace Mann argues, though, that Nationwide was in exclusive control of the Vicki Benton action because Horace Mann did not learn of it until after the default judgment had been entered. There are a number of issues of fact about whether Horace Mann knew or should have known of the Vicki Benton action before the entry of the default judgment and the extent of its knowledge during that time. However, these issues are not material to the resolution of Horace Mann's indemnification claim in this action.

Both sides have presented considerable evidence based on extensive discovery concerning Nationwide's activities and Horace Mann's conduct during the pendency of the Vicki

Benton action. Horace Mann admits that it learned of the default judgment in the Vicki Benton action at least three weeks before the deadline for filing a motion to reopen it and also admits that its Connecticut counsel were involved in that time in trying to reopen the default judgment. Its counsel filed an appearance in the Vicki Benton action, discussed the motion to reopen it with the Lewis firm, and even planned to attend the hearing on the motion. Thus, while Nationwide was likely more responsible for the events that led to the entry of the default judgment, Horace Mann was not without substantial responsibility for the final resolution of the bad faith action. At the very least, Horace Mann failed to act in a timely manner to ensure that a proper motion to reopen the default judgment would be filed and pursued.[11] In addition, it is undisputed that the ultimate settlement of the ensuing bad faith action included claims of misconduct of Horace Mann following the denial of the motion to reopen the default judgment; it was not just Nationwide's actions preceding the default judgment that precipitated the bad faith action against Horace Mann or caused Horace Mann to pay that settlement amount.[12]

Accordingly, Horace Mann has not raised a genuine issue of material fact that Nationwide's negligence alone was the direct, immediate cause of the injury, or that Nationwide

---

[11] Although Horace Mann does not raise this argument here, the Court recognizes that there is some uncertainty concerning whether the motion to reopen was in Pruden's best interest because of his previous assignment of his claims against Horace Mann and Nationwide to Vicki Benton. Nevertheless, it was not in Pruden's interest for a judgment against him to become final. Further, neither Horace Mann nor Morrison Mahoney attempted to communicate with Pruden concerning the motion.

[12] Horace Mann also argues that it was entitled to rely exclusively on counsel retained by Nationwide to properly file and pursue the motion to reopen the default judgment. However, as mentioned above in text, its own counsel also filed an appearance in the Vicki Benton action, and were on notice of the mishandling of the Vicki Benton settlement prior to the filing and denial of the motion to reopen the default judgment.

was in exclusive control of the situation, at least after the default judgment.  See Preferred

Accident Ins. Co. of N.Y. v. Musante, Berman & Steinberg Co., 133 Conn. 536, 542, 52 A.2d

862, 865 (Conn. 1947) ("[T]he applicability of [indemnification] is negatived, wherever it

appears that the party seeking indemnity was himself guilty of affirmative misconduct which was

a proximate cause of the injury in question.").

      B.    Equitable Subrogation

      Horace Mann also argues that it is entitled to equitable subrogation because Nationwide

was primarily liable for the amounts sought and obtained by Vicki Benton in the bad faith

action.[13]

      Equitable subrogation is "the mode which equity adopts to compel the ultimate payment

of a debt by one who, in justice, equity, and good conscience, should pay it."  Westchester Fire

Ins. Co. v. Allstate Ins. Co., 236 Conn. 362, 371, 672 A.2d 939, 944 (1996).  According to the

Connecticut Supreme Court:

> The object of legal or equitable subrogation is the prevention of injustice.  It is
> designed to promote and to accomplish justice, and is the mode which equity adopts
> to compel the ultimate payment of a debt by one who, in justice, equity, and good
> conscience, should pay it.  As now applied, the doctrine of legal or equitable
> subrogation  is broad enough to include every instance in which one person, not
> acting as a mere volunteer or intruder, pays a debt for which another is primarily
> liable, and which in equity and good conscience should have been discharged by the
> latter.

Wasko v. Manella, 269 Conn. 527, 532-33, 849 A.2d 777, 781 (Conn. 2004) (internal citation

omitted).  "A subrogee [here Horace Mann] has no right beyond those possessed by the subrogor

---

[13] Pruden would be the subrogor and Horace Mann the subrogee under a more common
factual situation.  However, as mentioned above in text, Pruden assigned his rights to Vicki
Benton following the entry of the default judgment.  This opinion assumes – but does not
determine – that equitable subrogation remains available after such an assignment.

[here Vicki Benton acting as assignee of Pruden's bad faith action]." Cont'l Cas. Co. v. Pullman, Comley, Bradley & Reeves, 929 F.2d at 106 (citing Conn. Sav. Bank v. First Nat'l Bank & Trust Co., 138 Conn. 298, 305, 84 A.2d 267, 270 (1951); cf. Restatement (Second) of Contracts § 336(4) (1981) ("An assignee's right against the obligor is subject to any defense or claim arising from his conduct.")  "[O]nce any equitable claim has been raised, the court retains its equitable jurisdiction to consider all of the equities before it in order to render complete justice." Morgera v. Chiappardi, 74 Conn. App. 442, 459, 813 A.2d 89, 99-100 (2003) (internal quotation marks omitted).[14]

While Horace Mann argues that the amount it paid to Vicki Benton in the bad faith action was only related to her personal injury action, their settlement agreement also clearly includes the claims of bad faith and liability related to Horace Mann's own handling of the Vicki Benton action both before and after the default judgment.  As set forth above in the discussion of common law indemnification, the undisputed facts indicate that Horace Mann was at least partly responsible for causing the circumstances underlying the failure to reopen the default judgment. It knew the true state of affairs weeks before a motion to reopen the default judgment was due, retained counsel who appeared in the action, and exchanged material information in time to seek

---

[14] The Connecticut Supreme Court has not held that the doctrine of equitable subrogation would permit an action by an excess carrier against a primary carrier.  However, the majority of jurisdictions have recognized such an action, and the United States Court of Appeals for the Second Circuit, applying Connecticut law, suggests that such an action would be recognized in that context.  Cont'l Cas. Co. v. Pullman, Comley, Bradley & Reeves, 929 F.2d 103; see also Westport Ins. v. St. Paul Fire and Marine Ins. Co., 375 F. Supp. 2d 4, 8-10 (D. Conn. 2005) (holding that excess insurer did not act as a volunteer in defending insured after primary insurer denied coverage and equitable subrogation action); Infinity Ins. Co. v. Worcester Ins. Co., No. CV000597436, 2000 WL 1890126, at *3 (noting that equitable subrogation was appropriate cause of action for excess insurer alleging it was injured by primary insurer's defense of mutual insured).

a reopening of the judgment. Following denial of the motion to reopen, Horace Mann's own conduct continued to contribute to Vicki Benton's claims of bad faith and the amount she demanded in settlement of those claims.

Certainly, Nationwide failed in discharging its duties to Pruden in its resolution of the Vicki Benton action, and bears much of the responsibility for the consequent problems that developed. But Horace Mann was also sufficiently involved to preclude equitable subrogation. Horace Mann paid–at least in part–its own obligation, rather than just Nationwide's, in settling the bad faith action. Thus, it has not raised a genuine issue of material fact that "justice, equity, and good conscience" compel Nationwide to pay this amount, and Horace Mann is not entitled to equitable subrogation.

IV.    Conclusion

For the reasons set forth above, Nationwide's motion for summary judgment [Dkt. # 140] is GRANTED, and Horace Mann's motion for summary judgment [Dkt. # 110] is DENIED.


SO ORDERED this ____31____ day of July 2008, at Hartford, Connecticut.

   __/s Christopher F. Droney_____

   **CHRISTOPHER F. DRONEY**
   **UNITED STATES DISTRICT JUDGE**